UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------- x

NANCY MELFA BOKSENBAUM, KAREN ANN : MEMORANDUM AND ORDER
KIEFER, and ILANIT MILLHOUSE :
:
                    Plaintiffs, : 09-CV-5425 (ENV) (JMA)
:
      -against- :
:
THE ABBOTT LABORATORIES, et al., :
:
                    Defendants. :
:

----------------------------------------------------------------- x
:
:
ROBIN DEBORAH LANE, KIRSTEN HAIM, and : 10-CV-4247 (ENV) (JMA)
WENDY KAREN SUMMERS, :
:
                    Plaintiffs, :
:
      -against- :
:
THE ABBOTT LABORATORIES, et al., :
:
                    Defendants. :
----------------------------------------------------------------- x

VITALIANO, D.J.

        On December 11, 2009, plaintiff Karen Anne Kiefer filed this products liability action against various pharmaceuticals companies including Abbott Laboratories. (Compl., No. 09-CV-5425 (E.D.N.Y.).) Plaintiff Robin Deborah Lane followed suit on September 17, 2010. (Compl., No. 10-CV-4247 (E.D.N.Y.).) Although Lane and Kiefer have negotiated and settled

1

with numerous defendants over the past two and three years respectively,[1] they now move to transfer venue of their actions to the District of Massachusetts. In that court, 53 unrelated plaintiffs are litigating similar, but not identical, claims against like defendants. These actions have been assigned for coordinated handling to United States Magistrate Judge Marianne Bowler. For the reasons set forth below, the transfer motions are denied.

## Background

Plaintiffs, both New York residents, commenced separate actions in this judicial district asserting that the defendant drug companies are liable for injuries plaintiffs sustained as the result of *in utero* exposure to the prescription medication diethylstilbestrol ("DES"), which each of the defendants formerly manufactured and marketed. (See generally Compl., No. 09-CV-5425; Compl., No. 10-CV-4247.) Plaintiffs have suffered various maladies and abnormal health conditions including, but not limited to, breast cancer. (See Letter (Apr. 12, 2012), Singer v. Abbott Labs., No. 05-CV-3386 (E.D.N.Y.) Each plaintiff's healthcare providers are located in New York State, as were the healthcare providers who prescribed and the pharmacies that provided DES to their mothers.[2] (Def.'s Resp. at 2-3.) In other words, not only did most of the "critical events" take place in New York, but numerous necessary fact witnesses are located in

---

[1] Defendants remaining in these actions and opposing transfer include: Eli Lilly and Company; Burroughs Wellcome Co. (Lane case), Camick Laboratories Inc. (Lane case), Dart Industries, f/k/a Rexall Drug Company, Inc., Lannett Co., Inc. (Lane case), Mallinckrodt LLC (sued as Mallinckrodt, Inc.), GlaxoSmithKline LLC, f/k/a SmithKline Beecham Corp. (sued herein incorrectly as GlaxoSmithKline f/k/a S.E. Massengill), Merrell Dow Pharmaceuticals, Inc. (Lane case), Premo Pharmaceutical Laboratories, Inc., f/k/a Lemmon Co. of N.J., Inc., Bristol-Myers Squibb f/k/a E.R. Squibb & Sons, Inc., and Pharmacia & Upjohn Company, f/k/a The Upjohn Company (Kiefer case).

[2] Plaintiffs note that their mothers' prescribing physicians are deceased, the pharmacies from which they acquired DES are no longer in business, and no medical or pharmacy records exist. (Shainwald Affirmation (June 21, 2012) at ¶ 10.) Even if true, the past history highlights Massachusetts' lack of contact with the subject matter of the two cases.

New York, beyond the subpoena power of the District of Massachusetts.[3] (Def.'s Opp. at 9.)

Discovery is well underway in the cases brought by movants. Each has participated in extensive settlement talks with some success. Lane has settled with nine defendants; Kiefer has settled with five. Like the other 11 plaintiffs with DES cases pending in this district, plaintiffs' cases have been assigned to Magistrate Judge Joan M. Azrack. Magistrate Judge Azrack has handled DES litigation for over seven years, managing the cases of over 15 DES plaintiffs. (See No. 05-CV-3386.) She builds on judicial expertise developed over the past two decades, during which the Eastern District of New York has handled numerous DES cases. It is unquestioned that Judge Azrack is a very able and thoroughly experienced judge with extensive expertise in managing DES litigation.

After choosing initially to file their suits in this district, and benefiting from its extensive experience in the management of DES cases, plaintiffs now seek to transfer their cases to the District of Massachusetts.[4] They aim to join Fecho v. Eli Lilly & Co., 11-cv-10152 (D. Mass.), a consolidated suit brought by 53 plaintiffs, who filed initially as a class in the District of Columbia. Id. The Fecho plaintiffs allege that they developed breast cancer as a result of *in utero* exposure to DES. The Massachusetts plaintiffs have already retained experts ("Fecho experts") to opine on the issue of causation. (Pl.'s Br. at 2.) In January 2012, a Daubert hearing on the admissibility of the plaintiffs' experts' testimony was held. Fecho v. Eli Lilly & Co., 2012 WL 194419 (D. Mass. 2012). In addition to ruling the opinion admissible, the court ordered the parties to mediate their dispute. Id. Mediation has since failed, and the case is now

---

[3] Plaintiffs note that one fact witness, Kiefer's sister, lives in Massachusetts, and a second, Lane's mother, lives in Florida and finds New York and Massachusetts equally convenient. (Pl.'s Reply at 5.) Additionally, two of the expert witnesses proposed by plaintiffs work in Massachusetts. (Pl.'s Br. at 5.)

[4] For whatever significance, plaintiffs note that federal courts in Massachusetts decided several DES cases in 1985. (Pl.'s Br. at 8.)

3

scheduled for trial before Magistrate Judge Bowler in January 2013. (Pl.'s Br. at 2.)

Critical to an understanding of the posture of the Massachusetts litigation is the consent of all parties there to trial by a magistrate judge. (Def.'s Opp. at 1, 4-5). Defendants here, however, have opposed such a reference. The Court cannot assume their strategy will change. With Fecho ready for trial in January 2013, any economy of judicial resources that would arguably attach to transfer and consolidation evaporates. Indeed, the nonalignment of the litigations might actually slow disposition of the cases currently pending before that Court. Plaintiffs claim nonetheless that a transfer would promote judicial economy by funneling a second Daubert hearing to Magistrate Judge Bowler. (Pl.'s Reply at 3.) Defendants argue that plaintiffs overstate the benefit of transferring the case. First, defendants note that different evidence may come before the court, because plaintiffs have not retained the Fecho experts, nor have the Fecho experts agreed to testify in the instant actions. (Def.'s Opp. at 2, 6, 8.) Second, defendants argue that New York law would govern the case irrespective of venue, negating any notion that a second Daubert hearing would be duplicative. Id. at 2, 5-6. In that regard, defendants contend that the public interest favors keeping the cases in New York, because New York courts have greater familiarity with local law. Id. at 11. Plaintiffs reply that they will put forward substantially similar expert testimony and play down the substantive differences between the law controlling Daubert analysis in the First and Second Circuits. (Pl.'s Reply at 3-5.)

## Discussion

The argument for transfer rests largely on the assertion that litigating two more actions in a venue where multiple similar actions are pending will serve the interest of justice and conserve judicial resources, particularly through avoiding duplicate hearings on these virtually identical issues.

## I. Legal Standard

Transfer of venue is controlled by 28 U.S.C. § 1404(a), which provides that, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." Solar v. Annetts, 08-CV-5747, 2010 U.S. Dist. LEXIS 30386, at *10-*11 (S.D.N.Y. Mar. 16, 2010) (quoting In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992)); see Red Bull Assocs. v. Best Western Int'l, Inc., 862 F.2d 963, 967 (2d Cir. 1988) (discussing the "considerable discretion in the district court to adjudicate motions for transfer"). The burden generally falls on the moving party to make "a clear and convincing showing that a matter should be transferred." McHale v. Citibank, N.A., 09-CV-6064, 2009 U.S. Dist. LEXIS 74943, at *16 (S.D.N.Y. Aug, 24, 2009) (internal quotation marks omitted).

The parties do not dispute that plaintiffs could have brought the current actions in the District of Massachusetts. Therefore, the Court must decide whether transfer would promote convenience and fairness. In doing so, the Court may examine a number of factors, including: (1) the initial choice of forum by plaintiffs; (2) the convenience of witnesses; (3) the location of relevant documents and other physical evidence; (4) the convenience of parties; (5) the locus of operative facts; (6) the availability of process to compel the attendance of unwilling witnesses; (7) the relative means of the parties; (8) the forum's familiarity with governing law; and (9) judicial economy and the interests of justice. See D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106-07 (2d Cir. 2006) (internal quotation marks and citation omitted); Scherillo v. Dun & Bradstreet, Inc., 684 F. Supp. 2d 313, 318 (E.D.N.Y. 2010); McHale, 2009 U.S. Dist. LEXIS 74943, at *17. "There is no strict formula for the application of these factors, and no single

factor is determinative." Scherillo, 684 F. Supp. 2d at 318-19.

## II. Transfer To The District of Massachusetts Is Not Appropriate

### A. Plaintiff's Choice of A New Forum is Entitled to Little Deference

Although a plaintiff's choice of forum is generally afforded considerable weight, Wald v. Bank of America Corp., 856 F. Supp. 2d 545, 549 (E.D.N.Y. 2012), when the "chosen forum has no connection to the events which gave rise to the claim for relief, plaintiff's choice of forum is a less weighty consideration." In re E. Dist. Repetitive Stress Injury Litig., 850 F. Supp.188, 194 (E.D.N.Y. 1994) (quotation omitted); see also Cagle v. Cooper Cos., 1996 WL 345771, *2 (S.D.N.Y 1996) ("[Plaintiff's choice of forum] is given little or no weight if there is little or no material connection between the chosen forum and the facts or issues in the case." (quotation omitted). Moreover, a plaintiff's choice of forum is entitled to less deference if the plaintiff chooses a forum other than her place of residence. Cagle v. Cooper Cos., 1996 WL 345771 at *2. Both factors cut against plaintiffs in the instant case. Obviously, if the roles were reversed, that is, if defendants were seeking transfer away from the district where plaintiffs reside and the pertinent conduct occurred, and plaintiffs were resisting, the same case law would give each plaintiff's initial choice of forum considerable, if not insurmountable, weight.

### B. Convenience Factors Do Not Support a Transfer

As plaintiffs acknowledge in their reply papers, "[t]here is not much dispute concerning the applicable law concerning the convenience of witnesses." (Pl.'s Reply at 5). All parties accept that the emphasis placed on accommodating fact witnesses, 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3851 (3d ed. 1998), does not extend to expert witnesses, Balaban v. Pettigrew Auction Co., 1997 WL 470373, *4 (E.D.N.Y. 1997). (Def.'s Opp. at 7; Pl.'s Reply at 5). Without the two potential Massachusetts-based Fecho experts, plaintiffs reference only one witness—Kiefer's sister—who resides in the District

6

of Massachusetts. In contrast, all of plaintiffs' treating doctors are located in New York, potentially beyond the subpoena power of the proposed transferee district.[5] (Def.'s Opp. at 3.) The limit on a court's power to compel attendance "is a significant factor in the Court's consideration of a transfer motion." Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 990 (E.D.N.Y. 1991). Without the pull of a large number of Massachusetts-based fact witnesses, plaintiffs cannot overcome the preference for adjudicating the subject cases in this district, which presumably has the power to summon the necessary witnesses.[6]

C. Neither Judicial Economy nor the Interests of Justice Support Transfer

"There is a general policy supporting the litigation of related claims in the same forum, because of the efficiency of conducting both discovery and pretrial and trial proceedings in one forum rather than two." New York City Health and Hosps. Corp. v. Cityside Archives Ltd., 1998 WL 196198, *2 (S.D.N.Y. 1998). However, where, as here, discovery is near complete, (Pl.'s Reply at 3), significant time has been spent by a defense team designed to meet claims in the forum initially designated by the plaintiff, and considerable effort has been made to apply the law of the forum in the context of motion practice and settlement discussions, transfer is not generally appropriate. See Haber v. ASN 50th St., LLC, 2011 WL 1226282 (S.D.N.Y. 2011); Royal & Sun Appliance Insur. PLC v. UPS Supply Chain Solutions, Inc., 2010 WL 4967984 (S.D.N.Y. 2010). In fact, it is especially inappropriate when the transfer motion is advanced by the very same plaintiffs who selected the initial venue and who have had a change of heart about their forum selection. Worse, here, the transferor court will be saved little because

---

[5] Plaintiffs observe correctly in their reply that Rule 32(a)(4)(B) and (D) of the Federal Rules of Civil Procedure permits parties to substitute depositions for live testimony. However, the plain language of the rule undermines their reliance on this procedural device by noting explicitly "the importance of live testimony in open court." Fed. R. Civ. P. 32(a)(4)(D).

[6] Plaintiffs have not argued that the relevant witnesses are beyond the reach of this Court.

of the other eminently similar cases that remain notwithstanding the transfer sought by plaintiffs. Finally, as plaintiffs acknowledge, barring a change of strategy on the part of defendants (objection to magistrate judge trial), transfer would not result in one rather than two trials, even in the transferee court. (Pl.'s Reply at 3.) Absent such a single trial, there are no economies of judicial resources in any court. The instant actions are consolidated before Magistrate Judge Azrack for pretrial handling already. More than that, as alluded to above, Judge Azrack has other active DES cases assigned to her that she would continue to manage even if the Lane and Kiefer cases were transferred to Massachusetts. Far more likely, a transfer would tax judicial and party resources even more. Almost certainly, the transferee judge or judges would need to be brought up to speed on the specifics of these two cases, probably by a new set of counsel applying a different set of circuit precedents. Under the totality of circumstances, transfer is most inappropriate.

## Conclusion

For the foregoing reasons, plaintiffs' motion to transfer venue of these actions to the District of Massachusetts is denied.

SO ORDERED.

Dated: Brooklyn, New York
November 21, 2012

s/Eric N. Vitaliano

ERIC N. VITALIANO
United States District Judge